NCH

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 JUN -3 PM 5:00
CLERK'S OFFICE
AT BALTIMORE
BY________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. WDQ-14-0479** |
| | : | |
| **v.** | : | **UNDER SEAL** |
| | : | |
| **TIMOTHY MICHAEL GRAY,** | : | **(Racketeering Conspiracy, 18 U.S.C. §** |
| **a/k/a "Mike Gray,"** | : | **1962(d); Conspiracy to Distribute** |
| **a/k/a"Uncle Mike,"** | : | **Controlled Substance, 21 U.S.C. § 846;** |
| **a/k/a "MG,"** | : | **Conspiracy to Commit Murder in Aid of** |
| **a/k/a "M,"** | : | **Racketeering, 18 U.S.C. § 1959(a)(5);** |
| **ROBERT NEDD,** | : | **Attempted Murder in Aid of** |
| **a/k/a "Pizza,"** | : | **Racketeering, 18 U.S.C. § 1959(a)(5);** |
| **a/k/a "P,"** | : | **Use, Carry, Brandish, and Discharge a** |
| **MARK BAZEMORE,** | : | **Firearm During and in Relation to Crime** |
| **a/k/a "Uncle Mark,"** | : | **of Violence, 18 U.S.C. § 924(c);** |
| **MARSHALL SPENCE,** | : | **Conspiracy to Use and Carry Firearms** |
| **a/k/a "Uncle M,"** | : | **During and in Relation to a Crime of** |
| **IRVIN VINCENT,** | : | **Violence and Drug Trafficking Crime, 18** |
| **a/k/a "O,"** | : | **U.S.C. § 924(o); Possession with the** |
| **a/k/a "O-dog,"** | : | **intent to Distribute Heroin, 21 U.S.C.** |
| **GLENDRICT FRAZIER,** | : | **§ 841; Possession of a Firearm in** |
| **a/k/a "Glen,"** | : | **Furtherance of a Drug Trafficking** |
| **a/k/a "Uncle Glen,"** | : | **Crime, 18 U.S.C. § 924(c); Possession of a** |
| **TIMOTHY HURTT,** | : | **Firearm by a Convicted Felon, 18 U.S.C.** |
| **a/k/a "Uncle Tim,"** | : | **§ 922(g);Aiding and Abetting, 18 U.S.C.** |
| **a/k/a "Tim,"** | : | **§ 2)** |
| **WILLIAM HARRINGTON,** | : | |
| **a/k/a "Boosie,"** | : | |
| **a/k/a "Boosey,"** | : | |
| **TYRONE FRANKLIN,** | : | |
| **a/k/a "Bones,"** | : | |
| **TROY KELLAM,** | : | |
| **a/k/a "G,"** | : | |
| **CALVIN PALMER,** | : | |
| **a/k/a "C,"** | : | |
| **DAVON ROBINSON,** | : | |
| **a/k/a "Veeto,"** | : | |
| **MICHAEL SMITH, JR.,** | : | |
| **a/k/a "Mikey,"** | : | |
| **a/k/a "Lil Mike,"** | : | |
| **a/k/a "Mik,"** | : | |
| **DAQUAN BURMAN,** | : | |
| **a/k/a "Day-Day,"** | : | |

...o0o...

## SECOND SUPERSEDING INDICTMENT

## COUNT ONE
**(Conspiracy to Participate in Racketeering Enterprise)**

### Introduction

1. The Black Guerilla Family ("BGF"), also known as the "Black Family" or "Jamaa," the Swahili word for family, "J" for short, is a nationwide gang operating in prisons and on the streets of various cities throughout the United States. Founded in California in the 1960s, BGF appeared in the Maryland correctional system in the 1990s. Although still a prison gang, BGF is involved in criminal activity, including murder, robbery, extortion, narcotics trafficking, obstruction of justice, and witness intimidation throughout communities in Baltimore City, the State of Maryland, and elsewhere.

2. At all times relevant to this Second Superseding Indictment, BGF organized its members into "regimes" or "bubbles" corresponding to particular regions or neighborhoods in Baltimore City and other Maryland communities. These "regimes" or "bubbles" were organized and controlled by a hierarchy, called "the bubble," which consisted of a "Commander;" "Lieutenant Commander;" various subordinate "Ministers," including Ministers of Justice, Defense, Education, and Finance; as well as other ranks including Sergeant at Arms and Field Marshall. Each subordinate had specialized responsibilities including the collection of dues and the defense of the regime against rival gangs or drug traffickers. The remaining members of the regime are said to be in the "field" and are responsible for following the directives of the bubble.

3. A "Bush-member" or "Bushman" ("BM") is a high-ranking senior BGF member. BMs oversee the activities of multiple regimes within their respective areas of the city. BGF

members often refer to Bush-members as being "in the Bush." A Commander is responsible for running his regime, but multiple regime Commanders may fall under the control of one BM in the BGF hierarchy.

4. At all times relevant to this Second Superseding Indictment, BGF members were required to follow a code of conduct, sometimes called the "22's" and "33's" or collectively the "55's." This code of conduct includes the rules by which all BGF members are governed, and include "never violate the treasury department (discipline fatal); never participate in snitching (death for violation); never steal from Jamaa; never lie to Jamaa; never participate in homosexual activities; never reveal the mysteries or secrecy of the dragon[1]; and never run during combat." BGF members who violate this code or who disobey an order from a superior are subjected to disciplinary measures called "sanctions," which include fines, physical beatings, stabbings, and murders administered by other BGF members.

5. At all times relevant to this Second Superseding Indictment, BGF members were required to know their oath, sometimes called "the oatmeal," or the "two S's and three I's," and to recite the oath to other members in a particular order to identify each other as BGF members. The BGF oath is: "Should I ever denounce you or forsake the chosen few, this oath shall kill me; should I ever become lax in discipline in times of strife and neglect my brothers this oath shall kill me; if I ever sought to do wrong or allow wrong to come to my brothers, this oath shall kill me; if at any time I refuse or deny to give assistance to this oath or reject my brother, this oath shall kill me; if I ever reveal the sworn secrecy of this oath, this oath shall kill me." BMs were required to know a separate oath based on a passage from the Bible.

---

[1] A two–headed dragon is one of the symbols of BGF.

6. At all times relevant to this Second Superseding Indictment, BGF members operated street-level drug distribution "shops" throughout Baltimore City and Maryland. These "shops" were operated by BGF members and associates and distributed primarily heroin, oxycodone, cocaine, cocaine base (commonly called "crack"), marijuana, and other controlled substances.

7. At all times relevant to this Second Superseding Indictment, BGF members engaged in criminal activities including, but not limited to, murder, robbery, extortion, narcotics trafficking, obstruction of justice, and witness intimidation.

8. At all times relevant to this Second Superseding Indictment, the following defendants among others were members and associates of BGF:

a. **TIMOTHY MICHAEL GRAY**, a/k/a, "Mike Gray," a/k/a,"Uncle Mike," a/k/a, "MG," a/k/a, "M," (GRAY);

b. **ROBERT NEDD**, a/k/a, "Pizza," a/k/a, "P," (NEDD);

c. **MARK BAZEMORE**, a/k/a, "Uncle Mark," (BAZEMORE);

d. **MARSHALL SPENCE**, a/k/a, "Uncle M," (SPENCE);

e. **IRVIN VINCENT**, a/k/a, "O," a/k/a, "O-dog," (VINCENT);

f. **GLENDRICT FRAZIER**, a/k/a, "Glen," a/k/a, "Uncle Glen," (FRAZIER);

g. **TIMOTHY HURTT**, a/k/a, "Uncle Tim," a/k/a, "Tim," (HURTT);

h. **WILLIAM HARRINGTON**, a/k/a, "Boosie," a/ka/, "Boosey," (HARRINGTON);

i. **TYRONE FRANKLIN**, a/k/a, "Bones," (FRANLKIN);

j. **TROY KELLAM**, a/k/a, "G," (KELLAM);

k. **CALVIN PALMER**, a/k/a, "C," (PALMER);

l. **DAVON ROBINSON**, a/k/a, "Veeto," (DAVON ROBINSON);

m. **MICHAEL SMITH, JR**., a/k/a, "Mikey," a/k/a, "Lil Mike," a/k/a, "Mik," (SMITH); and

n. **DAQUAN BURMAN, a/k/a "Day-Day"** (BURMAN).

**The Racketeering Enterprise**

9. At all times relevant to this Second Superseding Indictment, BGF, including its leadership, members and associates, constituted an "enterprise" as defined in Section 1961(4) and 1959(b)(2) of Title 18, United States Code, that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

**Purposes of the Enterprise**

10. Among the purposes of the enterprise were the following:

a. Enriching the leaders, members, and associates of the enterprise through the distribution of controlled substances, use of threats, intimidation, and violence, including, but not limited to, acts of murder, and retaliation against witnesses;

b. Promoting and enhancing the enterprise and its members' and associates' activities;

c. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the distribution of controlled substances, use of threats, intimidation, and violence, including acts of murder, witness retaliation, assaults, and other acts of violence;

d. Preserving and protecting the enterprise and its leaders by keeping its members and associates from cooperating with law enforcement through intimidation, violence, and threats of violence;

e. Providing financial support and information to members, including those who were incarcerated for committing acts of violence or other offenses;

f. Providing assistance to other gang members who committed crimes for and on behalf of the gang in order to hinder, obstruct, and prevent law enforcement officers from identifying, apprehending, and punishing the offender; and

g. Keeping victims and witnesses in fear of the enterprise and in fear of its leaders, members, and associates through acts and threats of violence.

**<u>The Racketeering Conspiracy</u>**

11. Beginning on a date unknown to the Grand Jury, but at least prior to 2012, and continuing until on or about the date of this Second Superseding Indictment, in the District of Maryland, and elsewhere, the defendants,

**TIMOTHY MICHAEL GRAY,**
**a/k/a "Mike Gray,"**
**a/k/a "Uncle Mike,"**
**a/k/a "MG,"**
**a/k/a "M,"**
**ROBERT NEDD,**
**a/k/a "Pizza,"**
**a/k/a "P,"**
**MARK BAZEMORE,**
**a/k/a "Uncle Mark,"**
**MARSHALL SPENCE,**
**a/k/a "Uncle M,"**
**IRVIN VINCENT,**
**a/k/a "O,"**
**a/k/a "O-dog,"**
**GLENDRICT FRAZIER,**
**a/k/a "Glen,"**

**a/k/a "Uncle Glen,"**
**TIMOTHY HURTT,**
**a/k/a "Uncle Tim,"**
**a/k/a "Tim,"**
**WILLIAM HARRINGTON,**
**a/k/a "Boosie,"**
**a/k/a "Boosey,"**
**TYRONE FRANKLIN,**
**a/k/a "Bones,"**
**TROY KELLAM,**
**a/k/a "G,"**
**CALVIN PALMER,**
**a/k/a "C,"**
**DAVON ROBINSON,**
**a/k/a "Veeto,"**
**MICHAEL SMITH, JR.,**
**a/k/a "Mikey,"**
**a/k/a "Lil Mike,"**
**a/k/a "Mik,"**
**DAQUAN BURMAN,**
**a/k/a "Day-Day,"**

each being a person employed by and associated with BGF, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, together with each other and with other persons known and unknown to the Grand Jury, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United States Code, which pattern of racketeering activity consisted of multiple acts involving:

a. Murder, chargeable under Md. Code Ann., Crim Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland punishable pursuant to Md. Code Ann., Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206 (Maryland Murder);

b. Extortion, chargeable under Md. Code Ann., Crim Law § 3-701 (Maryland Extortion); and § 3-705 (Maryland Extortion by verbal threat) and the Common Law of Maryland;

c. Robbery, chargeable under Md. Code Ann., Crim Law § 3-402 (Maryland Robbery); and § 3-403 (Maryland Robbery with a Deadly Weapon) and the Common Law of Maryland;

d. 21 U.S.C. § 846 (conspiracy to distribute a controlled substance);

e. 21 U.S.C. § 841 (distribution and possession with intent to distribute a controlled substance); and

f. multiple acts indictable under:

i. 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant);

ii. 18 U.S.C. § 1513 (retaliating against witnesses, victims and informants); and

iii. 18 U.S.C. § 1951 (relating to the interference of commerce through robbery and extortion).

**Manner and Means of the Racketeering Conspiracy**

12. Among the manner and means by which the defendants, their codefendants, and their associates achieved the objects of the conspiracy were the following:

a. It was part of the conspiracy that the defendants and their associates as members of BGF employed and used gang-related terminology, symbols, and tattoos.

b. It was further part of the conspiracy that the defendants and other members and associates of BGF paid dues to BGF leaders on a regular basis and would receive

reprisal for failure to do so. Said funds were held in "finance," generally by the Minister of Finance, and used for gang purposes including paying for bails and for lawyers of incarcerated members, and for the enrichment of incarcerated, said to be in the "sea," and non-incarcerated, said to be on the "land," high-ranking members of BGF.

c. It was further part of the conspiracy that the defendants and other members and associates of BGF were required to have and did regularly attend meetings with other BGF gang members to discuss, among other things: the structure and organization of the gang; past criminal acts; rival gangs and drug traffickers; BGF members who were arrested or incarcerated; the sanctioning of BGF members; the collection of dues; the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; plans and agreements regarding the commission of future crimes, including murder, extortion, robbery, the distribution of controlled substances; illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

d. It was further part of the conspiracy that the defendants and other members and associates of BGF agreed to purchase, maintain, and circulate weapons and firearms for use in criminal activity by BGF members.

e. It was further part of the conspiracy that the defendants and other members and associates of BGF agreed in order to perpetuate the enterprise and to maintain and extend their power, to commit acts, including murder, solicitation of murder, and assaults against individuals, including other BGF members and individuals suspected of cooperating with law enforcement, who posed a threat to the enterprise or jeopardized its operators.

f. It was further part of the conspiracy that the defendants and other members and associates of BGF would obstruct justice and harm, threaten, and intimidate witnesses and victims who cooperated with law enforcement, including other members of BGF.

g. It was further part of the conspiracy that the defendants and other members and associates of BGF distributed and conspired to distribute quantities of controlled substances, including, but not limited to, heroin, oxycodone, cocaine, cocaine base (commonly called "crack"), marijuana, and other controlled substances in and around Baltimore City, the State of Maryland, and elsewhere.

h. It was further part of the conspiracy that the defendants and other members and associates of BGF controlled drug territories called "shops" and permitted only BGF members to sell drugs in these shops. Any non-BGF members who wished to distribute drugs in these shops were forced to pay a tax or were targeted for violence by BGF members.

i. It was further part of the conspiracy that the defendants and other members and associates of BGF earned money for their enterprise and financed their activities, including the payment of dues, through the distribution of controlled substances, robberies, and extortion.

j. It was further part of the conspiracy that the defendants and other members and associates of BGF shared with leaders the proceeds of the enterprise's illegal activities, including, but not limited to, the trafficking of controlled substances.

k. It was further part of the conspiracy that the defendants and other members and associates of BGF used multiple cellular telephones and pre-paid cellular telephones to communicate with one another concerning and during the commission of the enterprise's illegal activities.

l. It was further part of the conspiracy that the defendants and other members and associates of BGF obtained, used, carried, possessed, brandished, and discharged firearms in connection with the enterprise's illegal activities, including, but not limited to, murder and attempted murder.

m. It was further part of the conspiracy that the defendants and other members and associates of BGF managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect their territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors, rival criminal organizations, and persons, and individuals suspected of cooperating with law enforcement.

n. It was further part of the conspiracy that the defendants and other members and associates of BGF concealed and hid, and caused to be concealed and hidden, the purposes of the acts done in furtherance of the enterprise, and used coded language and other means to avoid detection and apprehension by law enforcement and otherwise to provide security to members and associates of the enterprise.

o. It was further part of the conspiracy that the defendants and other members and associates of BGF agreed that acts of murder would be committed by members and associates of BGF against its members in order to impose discipline within the gang, and against other persons in order to protect and further the interests of BGF and its members.

p. It was further part of the conspiracy that the defendants and other members and associates of BGF used violence, threats of violence, and intimidation to prevent victims and witnesses from cooperating with law enforcement against members of BGF and the criminal acts committed by BGF.

## Overt Acts

13. In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

14. From 2013 until the date of this Second Superseding Indictment, **GRAY** has been the "city-wide" commander of BGF on the streets of Baltimore, Maryland.

15. Between the fall of 2013 and spring of 2014, **HURTT** and **GRAY** collected money from BGF gang members and BGF Commanders, who controlled BGF drug shops throughout Baltimore.

16. Between September 2013 and December 2013, **GRAY** sanctioned the murder of another BGF gang member, by an unindicted co-conspirator and fellow BGF gang member, "Tone," who fired several shots at the victim attempting to kill him, as **GRAY**, **HURTT**, and other BGF gang members and associates watched.

17. Between the fall of 2013 and summer of 2014, **GRAY** sanctioned the murder of another BGF gang member, a/k/a "Newbie," a BGF gang member, by **HURTT** and an unindicted co-conspirator.

18. On or about September 2, 2013, **HARRINGTON** distributed heroin to customers on Lemmon Street in Baltimore, Maryland and possessed five clear gel caps containing heroin.

19. On or about November 13, 2013, **VINCENT** distributed a quantity of heroin to another distributor of heroin thereby causing the death of the distributor's customer, Victim #1, who died from "heroin and oxycodone intoxication" on or about November 14, 2013.

20. On or about November 20, 2013, **GRAY** served as an intermediary for a drug transaction of five grams of heroin between two unindicted coconspirators.

21. On or about December 3, 2013, **VINCENT** distributed a quantity of heroin to another distributor of heroin thereby causing the death of the distributor's customer, Victim #2, who died from "heroin intoxication" on or about December 4, 2013.

22. Between December 2013 through July 2014, on a near daily basis, **VINCENT** distributed wholesale quantities of heroin to a coconspirator, who then sold the heroin for **VINCENT** to customers in Howard County, Maryland.

23. On or about December 28, 2013, **GRAY** and **BAZEMORE** demanded and collected payment of gang dues from BGF gang members, who were selling controlled substances, primarily heroin, in the area of Pratt and Payson Streets in Baltimore City, Maryland.

24. On or about December 30, 2013, **GRAY**, a convicted felon, attempted to acquire a firearm from **BAZEMORE**, who advised **GRAY** that **SMITH,** a convicted felon, was in possession of the firearm.

25. On or about December 30, 2013, **FRAZIER** conducted a drug transaction while **HURTT** and **GRAY**, both convicted felons and armed with a firearm, acted as protection for **FRAZIER**.

26. On or about December 30, 2013, **BAZEMORE** and an unindicted coconspirator discussed an issue involving one of the unindicted coconspirator's subordinates within the gang.

27. On or about January 5, 2014, **BAZEMORE** demanded and collected payment of gang dues from **SMITH**, who was tasked with collecting gang dues from other BGF gang members selling controlled substances, primarily heroin, in and around Pratt and Payson Streets in Baltimore City.

28. On or about January 6, 2014, an unindicted coconspirator advised **GRAY** that he was searching for an individual known as "Rick," who owed the unindicted coconspirator money for controlled substances provided to "Rick" on consignment.

29. On or about January 10, 2014, **GRAY** and **HURTT** distributed heroin to a BGF gang member known as "Big C" in Baltimore, Maryland.

30. On or about January 10, 2014, **GRAY** mediated a drug debt dispute between an unindicted coconspirator and **FRAZIER**. **FRAZIER** had provided the unindicted coconspirator heroin on consignment and the unindicted coconspirator had failed to repay **FRAZIER**.

31. On or about January 12, 2014, **BAZEMORE** and **GRAY** demanded and collected payment of gang dues from **SMITH,** who was tasked with collecting gang dues from other BGF gang members selling controlled substances, primarily heroin, in and around Pratt and Payson Streets in Baltimore City.

32. In or around January 2014, **GRAY** and **HURTT** distributed cocaine base to an unindicted co-conspirator on consignment for sale and distribution at the street level.

33. On or about January 13, 2014, **HURTT** told **GRAY** that he intended to kill the unindicted co-conspirator for failure to pay for the cocaine base provided on consignment.

34. On or about January 14, 2014, an unindicted coconspirator used a cellular telephone to contact **GRAY** to confirm the membership and rank within BGF of an individual known as "Darnell," to determine whether "Darnell" should be in control of the gang in a specific Maryland prison.

35. On or about January 15, 2014, **GRAY** served as an intermediary for a drug transaction of five grams of heroin between an unindicted coconspirator and an individual unknown to the Grand Jury.

36. On or about January 18, 2014, **BAZEMORE** stored firearm ammunition and provided the ammunition to **GRAY**, a convicted felon, who then provided the ammunition to an unindicted co-conspirator.

37. On or about January 19, 2014, **GRAY** and **BAZEMORE** demanded and collected payment of gang dues from **SMITH,** who was tasked with collecting gang dues from other BGF gang members selling controlled substances, primarily heroin, in and around Pratt and Payson Streets in Baltimore City.

38. On or about February 1, 2014, **GRAY** authorized **BAZEMORE** to sanction a BGF gang member in another unindicted co-conspirator's BGF regime.

39. On or about February 8, 2014, **GRAY** and an unindicted coconspirator discussed BGF members pulling guns on "civilians."

40. On or about February 11, 2014, **GRAY** served as an intermediary for a drug transaction of five grams of heroin between an unindicted coconspirator and an individual unknown to the Grand Jury.

41. On or about February 27, 2014, **NEDD** and **VINCENT** discussed the quality of heroin **GRAY** had for sale at $75 per gram.

42. On March 1, 2014, **FRAZIER** obtained Percocet (oxycodone) from Giant Pharmacy.

43. On or about March 2, 2014, **NEDD** fielded complaints from a heroin customer regarding the quality of the heroin **NEDD** had previously provided.

44. On or about March 2, 2014, **FRAZIER** sold 30 mg Percocet (oxycodone) pills to several BGF gang members in Baltimore, Maryland.

45. On or about March 5, 2014, **NEDD** discussed with an unidentified incarcerated member of BGF the poor quality of 100 grams of heroin that **NEDD** had recently distributed.

46. On or about March 6, 2014, **BAZEMORE**, **SMITH**, and an unindicted co-conspirator discussed BGF gang-related issues, in particular the collection of the week's gang dues.

47. On or about March 8, 2014, **PALMER**, **SMITH**, and several other unindicted co-conspirators conducted a BGF gang meeting at the direction of **BAZEMORE**.

48. On or about March 9, 2014, **GRAY** and **BAZEMORE** demanded and collected payment of gang dues from **PALMER** and **SMITH**, both of whom were tasked with collecting gang dues from other BGF members selling controlled substances, primarily heroin, in and around Pratt and Payson Streets in Baltimore City.

49. On March 10, 2014, **HARRINGTON** contacted **BAZEMORE** to confirm that a "special light" still existed on BGF gang member, Victim #3.

50. On or about March 10, 2014, **BAZEMORE** confirmed that the "special light" still existed and authorized **HARRINGTON** to kill BGF gang member, Victim #3.

51. On March 10, 2014, **HARRINGTON** shot Victim #3 in Baltimore, Maryland and was driven from the location by **BURMAN**.

52. On or about March 12, 2014, **SMITH** and an unindicted co-conspirator were present at a location in Baltimore City, and were in possession of a bar of Manite, a cutting agent for heroin, and a digital scale with heroin residue when a search warrant was executed at the location.

53. On or about March 13, 2014, **FRAZIER** distributed 30 grams of heroin to an individual unknown to the Grand Jury.

54. On or about March 16, 2014, **PALMER** and **BAZEMORE** discussed **PALMER's** drug distribution activities as well as issues with other BGF gang members.

55. In March 2014, **BAZEMORE** indicated that he was promoted to BM within the BGF by **GRAY**.

56. On or about March 20, 2014, **NEDD** distributed a quantity of heroin to an individual.

57. On or about March 20, 2014, **BAZEMORE** promoted **PALMER** within the ranks of the BGF.

58. On or about March 23, 2014 and March 24, 2014, **BAZEMORE** demanded and collected payment of gang dues from **PALMER**, who was responsible for collecting the dues from other BGF gang members selling controlled substances in and around Pratt and Payson Streets in Baltimore City.

59. On or about March 23, 2014 and March 24, 2014, **HARRINGTON** paid his BGF gang dues.

60. On or about March 27, 2014, in a telephone conversation, **BAZEMORE** and **PALMER** discussed drugs that were being distributed by an unindicted co-conspirator, in addition to a sanction given to that unindicted co-conspirator to write an essay about every position in the "bubble."

61. On or about March 28, 2014, an unindicted co-conspirator distributed a quantity of heroin, identified as "Hitman," to a cooperating source while operating from within a BGF-controlled drug shop at Pratt and Payson Streets in Baltimore, Maryland.

62. On or about March 29, 2014, **BAZEMORE** and **PALMER** discussed the completion of the sanction assignment by the unindicted co-conspirator.

63. On or about March 30, 2014, **PALMER** and **BAZEMORE** discussed **PALMER** providing narcotics to an unindicted co-conspirator to sell in order to earn enough money to pay BGF gang dues.

64. On or about April 3, 2014, an unindicted co-conspirator distributed a quantity of cocaine base to a cooperating source while operating from within a BGF-controlled drug shop at Baltimore and Catherine Streets.

65. On or about April 3, 2014, an unindicted co-conspirator distributed a quantity of heroin, identified as "Hitman," to a cooperating source while operating from within a BGF controlled drug shop at Pratt and Payson Streets in Baltimore, Maryland.

66. On or about April 4, 2014, **HARRINGTON** possessed 93 gel capsules of counterfeit drugs (a heroin look-a-like substance); seven grams of Fentanyl; three tablets of morphine; and one baggie of marijuana in Baltimore, Maryland.

67. On or about April 6, 2014, **BAZEMORE** met with other BGF members in the vicinity of Pratt and Payson Street in Baltimore, Maryland.

68. On or about April 8, 2014 to April 9, 2014, **BAZEMORE** and **PALMER** discussed sanctions against BGF members.

69. On or about April 11, 2014, **GRAY** and **SPENCE** discussed **SPENCE's** intention to obtain a supply of heroin and to have **GRAY** test the heroin.

70. On or about April 12, 2014, **HARRINGTON** contacted **BURMAN** and asked **BURMAN** to contact **BAZEMORE** to determine whether **HARRINGTON** continued to have authorization to kill Victim # 3.

71. On or about April 13, 2014, **SPENCE** distributed heroin to **GRAY.**

72. On or about April 14, 2014, **GRAY**, a convicted felon, returned a previously-provided firearm to **SPENCE**, a convicted felon.

73. On or about April 22, 2014, **PALMER** possessed 41 capsules of counterfeit drugs (a heroin look-a-like substance), and 22 vials of cocaine.

74. On or about April 22, 2014, **GRAY** and an unindicted coconspirator discussed whether **GRAY** advised an unindicted co-conspirator, known as "Crack," that he did not need to "function" in Bunch's regime.

75. On or about April 24, 2014, **DAVON ROBINSON** robbed an individual with a firearm. **DAVON ROBINSON** represented himself as a drug dealer who would sell the individual narcotics at an agreed upon time and place in Maryland and when the individual arrived to complete the drug transaction, **DAVON ROBINSON** robbed him of the money intended to purchase the narcotics.

76. On or about April 30, 2014, **VINCENT** distributed a quantity of heroin to another distributor of heroin thereby causing the death of the distributor's customer, Victim # 4, who died from "morphine and fentanyl intoxication" on or about May 1, 2014.

77. On or about May 2, 2014, **GRAY, BAZEMORE, SPENCE,** and an unindicted conspirator met to discuss BGF gang related matters in Baltimore, Maryland.

78. On or about May 4, 2014, **BAZEMORE** and **DAVON ROBINSON** demanded payment of gang dues from BGF gang members.

79. On or about May 5, 2014, in a cellular telephone call, **BAZEMORE** defined **PALMER's** leadership role within the BGF.

80. On or about May 10, 2014, **BAZEMORE** sanctioned **BURMAN**, with a beating, which was carried out by **PALMER** and **DAVON ROBINSON**.

81. On or about May 10, 2014, **BAZEMORE, PALMER, DAVON ROBINSON, BURMAN** and several other unindicted co-conspirators conducted a BGF gang meeting during which **BAZEMORE** ordered BGF gang member "Black" to be beaten if "Black" did not pay his dues.

82. On or about May 17, 2014, **BAZEMORE** promoted **DAVON ROBINSON** within BGF.

83. On or about May 18, 2014, **BAZEMORE** and **DAVON ROBINSON** demanded and collected payment of gang dues from BGF gang members, who were selling controlled substances in and around Pratt and Payson Streets in Baltimore City.

84. On or about May 18, 2014, in a telephone call, **BAZEMORE** advised **GRAY** that he promoted **DAVON ROBINSON** within BGF.

85. On or about May 24, 2014, **BAZEMORE** requested permission from **GRAY** to promote **SMITH** within BGF.

86. On or about May 24, 2014, **BAZEMORE** was notified that **DAVON ROBINSON** was attempting to sell the firearm used in the April 24, 2014 robbery of J.R. and use the proceeds to post bail.

87. On or about May 25, 2014, **DAVON ROBINSON** contacted **PALMER** and an unindicted co-conspirator to guide them to the firearm he used during the April 24, 2014 robbery, to sell the firearm, and use the proceeds for his bail.

88. On or about May 25, 2014, **HARRINGTON** advised **PALMER** that Victim # 3 was trying to have **HARRINGTON** sanctioned, while in jail, for shooting him. **PALMER** confirmed to **HARRINGTON** that **BAZEMORE** and **GRAY** authorized the shooting of Victim # 3.

89. On May 27, 2014, **HARRINGTON** was assaulted in jail by other BGF members for shooting Victim # 3.

90. On or about May 29, 2014, an unindicted co-conspirator distributed a quantity of heroin, identified as "Body Bag," to a cooperating source while operating from within a BGF-controlled drug shop at Pratt and Payson Streets in Baltimore, Maryland.

91. On or about June 10, 2014, **BURMAN** was in possession of heroin and cocaine at 1928 Lemmon Street in Baltimore, Maryland, a residence used by several BGF gang members to conduct drug and gang activity.

92. On June 13, 2014, **PALMER** robbed a pizza delivery person in the 500 block of North Carrolton Avenue in Baltimore, Maryland.

93. On June 14, 2014, **PALMER** robbed a pizza delivery person in the 500 block of North Carrolton Avenue in Baltimore, Maryland.

94. On or about June 14, 2014, **VINCENT** acted as an intermediary between a person unknown to the Grand Jury and **NEDD**. The unknown person distributed a quantity of heroin to **NEDD** for **NEDD** to test and determine the quality of the heroin.

95. On June 15, 2014, **DAVON ROBINSON** ordered an unindicted coconspirator to assault **PALMER**, who was in the process of being sanctioned by Victim # 5.

96. On June 16, 2014, **KELLAM** and **FRANKLIN** murdered Victim # 5.

97. On or about June 29, 2014, **VINCENT** advised **SPENCE** that **NEDD** and **GRAY** authorized the murder of "Gutter," a person unknown to the Grand Jury.

98. On or about July 3, 2014, **SMITH** distributed heroin, along with an unindicted co-conspirator, in Baltimore, Maryland.

99. On or about July 8, 2014, **VINCENT** was in possession of a quantity of heroin, two firearms, and BGF gang paperwork at his apartment in Anne Arundel County, Maryland, when a search warrant was executed at the location.

100. On or about July 8, 2014, **VINCENT** was in possession of a quantity of heroin in individual bags for street-level distribution and a firearm, when a search of his vehicle, which was used by him to distribute heroin between December 2013 and July 2014, was conducted.

101. On or about July 9, 2014, **NEDD**, a convicted felon, was in possession of a firearm, which he admitted to law enforcement was his and for his protection, and BGF paperwork, when a search warrant was executed on his residence in Baltimore, Maryland.

102. On or about July 9, 2014, **SPENCE** was in possession of BGF gang paperwork when a search warrant was executed on his residence.

103. On or about July 31, 2014, **BAZEMORE** was in possession of firearms and BGF gang dues payment logs, which included the names: "Ant-Ant;" "Mik" (**SMITH**); "Man-Man;" "Itchy;" "BOOSIE" (**HARRINGTON**); "VEETO" (**DAVON ROBINSON**); and "Marlow."

104. On or about September 11, 2014, **SPENCE** murdered BGF gang member Victim # 6, a minor, by firing multiple gun shots, including one to the victim's face, in Baltimore, Maryland.

105. In or around September 2014 through November 2014, in a telephone conversation between **SPENCE** and M.B., a minor, **SPENCE** threatened and intimidated M.B., a witness in the investigation into the homicide of Victim # 6.

106. In or around September through November of 2014, **SPENCE** and a fellow BGF gang member discussed the murder of witnesses who were involved with the investigation into the homicide of Victim # 6.

107. On or about January 7, 2015, **TYRONE FRANKLIN** possessed approximately 3.5 pounds of marijuana.

18 U.S.C. § 1962(d)

**COUNT TWO**

**(Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)**

The Grand Jury for the District of Maryland further charges that:

Beginning on a date unknown to the Grand Jury, but at least prior to 2012, and continuing until on or about the date of this Second Superseding Indictment, in the District of Maryland, the defendants,

**TIMOTHY MICHAEL GRAY,**
**a/k/a "Mike Gray,"**
**a/k/a "Uncle Mike,"**
**a/k/a "MG,"**
**a/k/a "M,"**
**ROBERT NEDD,**
**a/k/a "Pizza,"**
**a/k/a "P,"**
**MARK BAZEMORE,**
**a/k/a "Uncle Mark,"**
**MARSHALL SPENCE,**
**a/k/a "Uncle M,"**
**IRVIN VINCENT,**
**a/k/a "O,"**
**a/k/a "O-dog,"**
**GLENDRICT FRAZIER,**
**a/k/a "Glen,"**
**a/k/a "Uncle Glen,"**
**TIMOTHY HURTT,**
**a/k/a "Uncle Tim,"**
**a/k/a "Tim,"**
**WILLIAM HARRINGTON,**
**a/k/a "Boosie,"**
**a/k/a "Boosey,"**
**TYRONE FRANKLIN,**
**a/k/a "Bones,"**
**TROY KELLAM,**
**a/k/a "G,"**
**CALVIN PALMER,**
**a/k/a "C,"**
**DAVON ROBINSON,**
**a/k/a "Veeto,"**
**MICHAEL SMITH, JR.,**
**a/k/a "Mikey,"**

**a/k/a "Lil Mike,"**
**a/k/a "Mik,"**
**DAQUAN BURMAN,**
**a/k/a "Dae-Dae,"**

did knowingly and intentionally combine, conspire, confederate and agree with one another and with others known and unknown to the Grand Jury to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance; 280 grams or more of a mixture of substance containing a detectible amount of cocaine base, a Scheduled II controlled substance; five kilograms or more of a mixture of substance containing a detectible amount of cocaine, a Scheduled II controlled substance; and a mixture or substance containing a detectible amount of oxycodone, a Schedule II controlled substance.

21 U.S.C. § 846

## COUNT THREE
## (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 9 and Paragraph 12 of Count One of this Second Superseding Indictment are incorporated here.

2. BGF, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. BGF, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206; acts involving robbery, in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403, and the Common Law of Maryland; acts involving extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, and the Common Law of Maryland; and acts involving the distribution, the possession with the intent to distribute and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 841; (distribution and possession with intent to distribute a controlled substance); and 21 U.S.C. § 846 (conspiracy to distribute a controlled substance); and acts indictable under: 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant); 18 U.S.C. § 1513 (relating to retaliation

against a witness, victim, or an informant); and 18 U.S.C. § 1951 (relating to the interference of commerce through robbery and extortion).

4. In or about March 2014, defendants **WILLIAM HARRINGTON, a/k/a, "Boosie," a/k/a, "Boosey,"** and **MARK BAZEMORE, a/k/a, "Uncle Mark,"** were members and associates of BGF.

5. On or about March 10, 2014, in the District of Maryland and elsewhere, the defendants,

**WILLIAM HARRINGTON,**
**a/k/a, "Boosie,"**
**a/k/a, "Boosey," and**
**MARK BAZEMORE,**
**a/k/a, "Uncle Mark,"**

for the purpose of gaining entrance to and maintaining and increasing position in BGF, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to murder Victim #3, in violation of Maryland Code, Criminal Law §§ 2-201 and 2-204, and punishable pursuant to Maryland Code, Criminal Law §§ 2-201, 2-204, and 1-202, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)

**COUNT FOUR**
**(Attempted Murder in Aid of Racketeering)**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 9 and Paragraph 12 of Count One, and Paragraphs 2 through 4 of Count Three of this Second Superseding Indictment are incorporated here.

2. On or about March 10, 2014, in the District of Maryland and elsewhere, the defendants,

**WILLIAM HARRINGTON,**
**a/k/a, "Boosie,"**
**a/k/a, "Boosey," and**
**MARK BAZEMORE,**
**a/k/a, "Uncle Mark,"**

for the purpose of maintaining and increasing position in BGF, an enterprise engaged in racketeering activity, feloniously, willfully, and with deliberately premeditated malice, attempted to murder Victim #3, by using a firearm to shoot Victim #3, which crime constituted attempted murder under Maryland Code, Criminal Law §§ 2-205 and 2-206, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

**COUNT FIVE**
**(Use, Carry, Brandish, and Discharge a Firearm During and In Relation to a Crime of Violence)**

1. The Grand Jury for the District of Maryland further charges that:

2. On or about March 10, 2014, in the District of Maryland and elsewhere, the defendants,

**WILLIAM HARRINGTON,**
**a/k/a, "Boosie,"**
**a/k/a, "Boosey," and**
**MARK BAZEMORE,**
**a/k/a, "Uncle Mark,"**

did knowingly, intentionally and unlawfully use, carry, brandish and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States -- specifically, conspiracy to participate in a racketeering enterprise, conspiracy to commit murder in aid of racketeering, and attempted murder in aid of racketeering, in violation of Title 18, United States Code, Sections 1962(d), and 1959(a)(5) -- as set forth in Counts One, Three, and Four of this Second Superseding Indictment, which are incorporated herein.

18 U.S.C. § 924(c)(1)(A)
18 U.S.C. § 2

**COUNT SIX**
**(Conspiracy to Use and Carry a Firearm During and In Relation to a Crime of Violence and Drug Trafficking Crime)**

The Grand Jury for the District of Maryland further charges that:

Beginning on a date unknown to the Grand Jury, but at least prior to 2012, and continuing until on or about the date of this Second Superseding Indictment, in the District of Maryland, and elsewhere, the defendants,

**TIMOTHY MICHAEL GRAY,**
**a/k/a, "Mike Gray,"**
**a/k/a,"Uncle Mike,"**
**a/k/a, "MG,"**
**a/k/a, "M,"**
**MARK BAZEMORE,**
**a/k/a, "Uncle Mark,"**
**GLENDRICT FRAZIER,**
**a/k/a, "Glen,"**
**a/k/a, "Uncle Glen," and**
**TIMOTHY HURTT,**
**a/k/a, "Uncle Tim,"**
**a/k/a, "Tim,**

did knowingly, willfully and unlawfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury to use and carry firearms during and in relation to crimes of violence and drug trafficking crimes which may be prosecuted in a court of the United States, -- specifically, conspiracy to participate in a racketeering enterprise in violation of Title 18, United States Code, Sections 1962(d) -- as set forth in Count One of the Second Superseding Indictment and conspiracy to distribute and possess with the intent to distribute controlled substances as set forth in Count Two of the Second Superseding Indictment, which are incorporated herein.

18 U.S.C. § 924(o)

**<u>COUNT SEVEN</u>**
**(Possession with Intent to Distribute Heroin)**

The Grand Jury for the District of Maryland further charges that:

On or about July 8, 2014, in the District of Maryland, the defendant,

**IRVIN VINCENT,**
**a/k/a "O,"**

did knowingly and intentionally possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

**COUNT EIGHT**
**(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)**

1. The Grand Jury for the District of Maryland further charges that:

2. On or about July 8, 2014, in the District of Maryland, the defendant,

**IRVIN VINCENT,**
**a/k/a "O,"**

did knowingly possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, Conspiracy to Distribute and Possession with Intent to Distribute Heroin in violation of Title 21, United States Code, Section 846, as alleged in Count Two of this Second Superseding Indictment, and Possession with Intent to Distribute Heroin in violation of Title 21, United States Code, Section 841(a)(1), as alleged in Count Seven of this Second Superseding Indictment, which are incorporated herein by reference.

18 U.S.C. § 924(c)(1)(A)(i)
18 U.S.C. § 2

**COUNT NINE**
**(Possession of a Firearm by a Felon)**

The Grand Jury for the District of Maryland further charges that:

On or about July 8, 2014, in the District of Maryland, the defendant,

**IRVIN VINCENT,**
**a/k/a "O,"**

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, firearms, to wit: a loaded Taurus .357 caliber revolver with serial number 5241214; a loaded Glock 9mm semi-automatic handgun; and a loaded CZ100 9mm semi-automatic handgun.

18 U.S.C. § 922(g)(1)

Rod J. Rosenstein /jfw
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED
Foreperson

6/03/15
Date